Good morning, your honors. May it please the court, my name is Caleb Mason, representing Theresa Campbell. She's currently incarcerated in Victorville. This is on its face a fairly simple and straightforward case of statutory interpretation of a couple sentences in 18 I think it's a pretty important case, though, nonetheless, and I appreciate the court taking it on expedited briefing, not just for Ms. Campbell, who suffered, I think, a pretty significant injustice, but because this is a case of first impression for this court and it impacts every federal defendant who ends up on supervised release, this is a statute which sets a significant jurisdictional limit for district courts in adjudicating petitions for supervised release revocation and constrains the potential, what I guess I would call serious mischief that can be worked when the probation officer decides to do what happened in this had gone without a single allegation of any violation, then make what I call the placeholder allegation of some simple violations, in this case three days before the expiration of the term, and then prior to the hearing on those allegations, go back, look back three years to the very beginning of the term, and add 22 additional allegations that were factually completely unrelated to the original ones, so that by the time Ms. Campbell's hearing arose, she was looking at 25 allegations of violations rather than three. The district court, in fact, did not sustain all of the original three, but only two of them. So the difference for Ms. Campbell and for anybody else in this situation is that instead of looking at two allegations of violations of supervised release, she's looking at We can look at this case to begin with simply as an exercise in reading the statutory language. And I think we can put the interpretive question for the Court fairly simply. What does the word such mean, or such a, such a violation? Does it mean any? And I've been thinking over this in my mind as a lifetime speaker of English. I don't think there is a single context in which the term such a violation means any violation. That is, and, you know, it's on pages 6 and 7 of my opening brief, the Court may engage in a hearing after the expiration of a term of supervised release, and then the bolded text here, if before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation. So it's that term, such a violation. Well, what does it mean? It means, we claim, I think, and this is the most natural reading of the text and the reading most in keeping with the purpose of supervised release in 3583I, and with simply doing justice in this and every similar case that's going to follow, that language, such a violation, has to refer back to whatever violation was alleged prior to the expiration of supervised release in a warrant or summons. It does not open up a door where the probation officer may allege one violation at any time during the term, then wait till the term expires and allege as many additional ones as he or she chooses. The case that the government relies on is this Naranjo case from the Fifth Circuit. Right, which is focused on the word a. That's right. And the Naranjo case, Your Honor, as the Court knows, says that there's a big difference between saying such violation and such a violation, and that really the interpretation would have been completely opposite if the statute had said such violation rather than such a violation. I'm asking this Court to obviously, you know, disagree with. So, Counsel, this is the case of first impression in our circuit. Can you give me the lay of the land as to where the other circuits are in this interpretation? Sure, Your Honor. The only other circuit with a published opinion on point is the Second Circuit, and that case is called Edwards, and both parties discussed that in our briefs. The Edwards Court announced a rule which is, and analyzed the Naranjo case in some detail, and expressly declined to follow Naranjo all the way to this holding that such a violation basically means anything. As long as you've alleged any violation prior to the expiration of the term, you may go back and allege any additional ones for a post-expiration hearing. The Edwards Court in the Second Circuit said, well, we're going to impose this factually related condition. So the Edwards Court says that the Court does retain jurisdiction to hear allegations of violation that were made after the term of supervised release expired so long as they are factually related to allegations that were timely alleged in a warrant or summons prior to the expiration. If you were to apply that rule to this case, you would say that the casino winnings violations were not factually related to the other things that they allege. I can't remember what they are right now. Yes, Your Honor, that's correct. On the Edwards factually related test, I think Ms. Campbell clearly comes out the winner here. The allegations that were timely alleged were that she had failed to report ownership of a car and that she had failed to report to her probation officer that she had reported that car as stolen. The third allegation, which was not sustained, had to do with a line of credit for another car. So both of those, you know, all three of those initial timely allegations involved these transactions involving a leased car. So the other two transactions had to do with breaking the condition of having interaction with the police. One of them, that was one condition. The other condition was ownership of a vehicle or substantial financial transactions. Then the conditions with respect to the casino winnings, which went all the way back three years to the beginning of the term, the alleged violation there was failure to report income. There was absolutely no connection, either alleged or proved, nor could there have been, between the car transactions and the casino winnings. They were completely distinct, unrelated, involving different people. So we have the Fifth Circuit rule and then the Second Circuit rule, which narrows the Fifth Circuit's understanding. And what rule are you arguing for today? I'm arguing for a rule that I think is consistent with the plain language of the statute. And that is the rule that Judge Garwood articulated in his dissent in Naranjo, meaning 3583I provides jurisdiction to adjudicate the allegation that is alleged timely prior to expiration in a warrant or summons, and not others. That's the rule that I would articulate for this Court, that I would ask this Court to articulate today. However, with respect to the factually related rule, I think as a fallback position, I think it's not an unreasonable rule. I don't think it's required by the text. And to anticipate what my colleague from the U.S. Attorney's Office is likely to say, and then I'd like to reserve one minute, I've got about 45 seconds. The Edwards decision leaves open, it says we do not find it necessary to decide what we would do in the case of purely unrelated factual allegations. On the case before us, said the Edwards Court, we see new allegations that are factually related. And we think in that situation, the Court does have jurisdiction. So I don't know if you would call that a penumbra of the statutory text or what. I think that this statutory text is quite clear. Such a violation looks back to the violation alleged timely in a warrant or summons. I think that is a strongly defensible, textually sound, fair and just interpretation in the statute. On the facts in this case, did the probation, was the probation officer aware of the winnings before the expiration of the term? Yes he was, Your Honor. He testified that he was. So he could have, he could have filed, seeking, he could have sought a warrant or revocation on that ground even though he didn't know the extent of it. I believe that's correct, Your Honor, and I would refer the Court to my reply brief where I tried to get into as much detail as possible about that testimony as to exactly when he was aware. He testified that he was aware of these in early February, and then he ran a search as he put it. So he, you know, he was aware of something. I think he should and could have been aware of the details. Well, he claimed he wasn't aware of the details and he basically filed a petition so he could get, find out what was going on, basically is what he did, right? That may be, Your Honor, that's, I mean, that's why I called it essentially a placeholder violation. And what we're arguing in this case is that that is not consistent with the intent, purpose, or language of the statute, to wait until the term ends, file a placeholder violation so that you then kind of leave the door open, then go back and start investigating a whole bunch of other things, and file, you know, an additional 22 or 23 allegations as happened here. And just for the record, those allegations are she filed false reports 22 times by not reporting the winnings? That's it, yes. Okay. Thank you, Your Honor. And I am over time. I apologize. I would, I would request a brief rebuttal if there's anything I'd like to answer. Good morning, Your Honors. And may it please the Court, Tom Rabarczyk on behalf of the United States. Morning. Morning. I'd like to start first with a question that Judge Wardlaw asked regarding the contours in the landscape of the law regarding Section 3583I and the circuit's interpretation. While defense counsel has pointed out that the, only the Naranjo Court has embraced this reading that the court is advancing, the Fourth Circuit in an unpublished decision also embraced the reading, as well as the Eleventh Circuit in a published decision in, the Fourth Circuit in Brennan and the Eleventh Circuit in Presley both embraced the reading, as well as the district court within this circuit, a district of Arizona court, found that the reading that the government advances here is a reasonable reading of the Section 3583I. And in fact, You're referring to me? Yes, Your Honor. I am referring to you. Moving on, the district court in this case did not err when it adjudicated the allegations in the amended petition filed on March 22nd, 2017, alleging conduct that occurred within the period of defendant's supervised release where there was a timely filed petition and summons. Holding otherwise would run contrary to the plain language interpretation of the statute embraced by the Naranjo Court and two other circuit courts. And it would also work to undermine important policy considerations concerning supervision and incentivize defendants to conceal their actions just long enough to see if they can get away with what they were doing, which is exactly what happened here. But most of the practical matter, most people on supervised release want to avoid bringing potential violations to the probation officer's attention. Yes, Your Honor. There is that incentive. So it seems to me there ought to be an incentive for the parole officers when they are aware of a violation to, especially one as serious as casino winnings, to report it. Also, I'm wondering why the parole officer here sat on what I think are really potentially serious, the two having to do with the car and the alleged theft of the car. That seemed pretty serious, like it's somewhat nefarious behavior to me. Your Honor, I believe that what the record reflects, and specifically in the summary of violation report, the supplemental report, I believe, the probation officer said that he was aware of those allegations from 2014. However, the investigation was ongoing. And as this Court has recognized in the past, a probation officer has significant leeway to try to work with an individual, a defendant, to make sure that, and to try to make sure that they are rehabilitated and to keep them in, you know, have a potential allegation that they may file against them, but make sure that there's nothing else more significant happening. And in this case, at the time, the Riverside, I believe it was the Riverside Police Department did not file charges. And so as this Court has recognized, there is significant discretion for a probation officer. So here, so if we ruled, I have a lot of questions about this, but we're now talking policy, obviously. But if we ruled in your favor, wouldn't that encourage probation officers to, who become aware of violations, to sit, to just sit on them until the end and then take all the time in the world that they need to investigate them and then present that at a hearing? And is that really fair when someone's close to finishing up their term? Your Honor, I don't know if that's exactly what happened in this case. I think as defense counsel has referred to, there were these three other allegations from, one from 2014, I believe the other one. 2015. 2015. Those allegations, at the time, when he learned of them, he may, the probation officer, it's moment. And then as he was getting close to the end of supervision, he may have learned of these other allegations. And that's exactly the type of behavior that, if it's being concealed, which in this case, probation does have to rely on the honesty of the defendant. They have to have a relationship. It's not a police officer, you know, suspect relationship. It's supposed to be a relationship based on trust. And the probation office have these monthly supervision reports, which they require the and say that what they're telling to the probation officer is truthful. And they're encouraged to have an ongoing dialogue about what's happening, what's happening in their life, to make sure that when they're done, when they're finished with their supervision, they can be successfully reintegrated into society, that at the end, that's what happened. And in this case, particularly in this case, under these facts where the defendant had been previously convicted of fraud, and the behavior that the probation officer discovered, which is in the record in February of 2017, regarding the failure to disclose these casino winnings, fits the mold of what the defendant had previously been engaged in, fraud and deceitful conduct. And I think the probation officer and probation officers generally have an interest in making sure that when an individual is released back into society without supervision, that that individual is rehabilitated. So what he essentially did was he filed these allegations as a placeholder, as your opposing counsel says, until he could further investigate the other stuff that was going on. Your Honor, that's not exactly clear in the record. The record says it's a placeholder. That looks like what he did. And, Your Honor, I think there also is an important incentive that we want to create here, which is we don't want to file allegations that, at the time, you're not completely aware if there is a truthful allegation yet. In this case, I think the supplemental report regarding the March 22nd allegation say that the probation officer went and sought the records from the casino. He did not have them, I believe, at the time of the filing. So it probably creates a perverse incentive to have probation officers file allegations that they don't have the full backing of. But the thing is, you're talking about this close relationship he has with her. Why didn't he call her in and say, you know, I think you've been having some casino winnings. I don't have all the records, but you've been doing this, what's going on, and talk to her about it during her term. He may have been able to get the information from the casinos very quickly, especially if she admitted to it in their wonderful relationship that they have. Your Honor, I wasn't trying to suggest that they had a wonderful relationship. You're saying they have an ongoing relationship, and he should have confronted her, I think, if they're meeting monthly. It looks like from this record that her lawyer and she were sandbagged by this supplemental report. I mean, the lawyer didn't even read it. He admits he didn't even read it because they didn't expect it. But I don't want to waste time on all of this. What I really want to get to is just the strict interpretation of the statute. Do you think it's clear and ambiguous? Your Honor, we believe that it is the plain reading of the statute based on the Naranjo Court, the beginning of the statute, which reads. My question is, do you think it's unambiguous? We believe it's unambiguous, yes, Your Honor. Okay. We embrace the Naranjo Court's reading, as well as in terms of the Edwards Court also read such a violation to be consistent with the way that the Naranjo Court read it in terms of expanding the violations. But it made it related. And here you don't have related charges. Your Honor. They're actually related. Yes, Your Honor. I don't think you can embrace both Naranjo and Edwards. I'm not necessarily embracing the Edwards approach in terms of the relatedness. I'm just pointing out for the Court that in terms of the use of such and such a violation, they embrace the same interpretation that it applies to more than just. But it's the position of your office that the statute is unambiguous. Yes, Your Honor. Okay. So do you agree that it's a jurisdictional statute? We believe that it is a hybrid jurisdictional statute. What does hybrid mean? It means that there is a jurisdictional element. The power of the court in this case, the subject matter of power of the court, refers to the power to revoke supervision. And that personal jurisdiction, as the Supreme Court has said, there's two elements of jurisdiction, subject matter jurisdiction and personal jurisdiction. The personal jurisdiction then is activated once there's a timely filed summons or a warrant. Well, the Court has jurisdiction over the issue. Correct. Okay. So don't we construe jurisdictional statutes narrowly? Your Honor, I do not have the answer to that question in front of me. All right. So in my experience, the Supreme Court has said that we construe jurisdictional statutes narrowly. So it would seem to me that we need to bear that in mind in interpreting this statute. I guess I don't have anything else on that. I have one question, if I could take counsel over his time. And I may have a misunderstanding here. I'm sure the other panel members know a lot more about supervised release than I do, because I've never had the good fortune to be a district court judge. But my question is this. If a violation is disclosed to the person being supervised, would it tend to turn out that there's a better chance they would mend their ways and correct their conduct in light of what their supervisor had said? And if something's held back and just a placeholder complaint is filed and then expanded later? Your Honor, it's possible that that is the situation. I can tell you from the record in this case that it revealed that the probation officer in December of 2016 did confront the defendant with the allegations related to the vehicles, and the defendant denied those allegations, and then in January of 2017 proceeded to file yet another false monthly supervision report as found by the allegations sustained by Judge O'Connell. So I think it's just unclear as to whether in what situations that would work. Thank you. Do you have anything? No further questions. Thank you very much, counsel. You can have a couple minutes given that the other counsel went over to. Thank you, Your Honor. I have only two comments to make. The first is with respect to the Fourth Circuit and the Eleventh Circuit, the two cases counsel refers to. Don't forget the district court. And the district court of Arizona. I am not forgetting that, Your Honor. Both these cases, the Brennan case and the Presley case, Brennan is from the Fourth Circuit, Presley is from the Eleventh Circuit, in both of those cases the warrant or summons at issue was filed before the expiration of supervised release. Neither of those cases have anything to do with this issue. I read those cases with surprise when I saw them in the government's brief. I brought them here today. And I can read, starting from Brennan, this is at page 55 of the Brennan opinion cited in our briefs. The warrant in this case was issued in June 2005 and executed in October 2006, clearly before the expiration of Brennan's supervised release. The Presley case from the Eleventh Circuit I'm reading from page 1347 of the opinion. The summons and warrant were each aimed at getting Presley back before the district court for a supervised release hearing. Both were issued before Presley's term of supervised release was over. So on the question, and I think this is a very important question for this Court, what is the posture of the other circuits? We really are in the posture, as I laid it out in our opening brief. We have the Fifth Circuit opinion. We have the Second Circuit opinion from Edwards. That's it. The jurisprudential landscape here is quite open, and this Court needs to say something about this as a matter of first impression. We do not have a situation where there is, you know, a preponderance of circuits that have decided it. There really isn't. With respect to Judge Gould's question about supervised release, I would say yes, wholeheartedly and unambiguously, the purpose of supervised release is to maintain a continuing relationship with the supervisee to make their behavior better, to adjust their behavior continuously. It is not a game in which the probation officer's goal is to hide violations, store them up, and then pull away the football on the last day. That is absolutely contrary to what policy, Congress, every district court that supervises releasees wants to see out of a supervised release program. Unless the Court has further questions. None here. Thank you. Okay. Thank you very much. U.S. v. Campbell will be submitted.
judges: Wardlaw, Gould, Collins